**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CHARLES A. KURILLA, II, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.  04-1724 |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                    **OCTOBER 18, 2005**

Plaintiff, Charles A. Kurilla, II, ("Kurilla"), brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the decision of the Commissioner of Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Kurilla claims he is disabled as a result of back pain that led to a multitude of other ailments, such as osteoarthritis in his knee, degenerative disc disease, carpal tunnel problems, a rotator cuff tear in his right shoulder, tendinitis in his left shoulder, fibromyalgia, and depression.

The parties filed Cross-Motions for Summary Judgment which were referred to United States Magistrate Judge David R. Strawbridge for a report and recommendation.  Magistrate Judge Strawbridge recommended that Kurilla's Motion be granted and that the Commissioner's Motion be denied.  The Commissioner filed Objections to the Report and Recommendation.  For the reasons stated below, the Commissioner's Objections to the Report and Recommendation are

sustained in part and denied in part, the Report and Recommendation is rejected in part and adopted in part, the cross-motions for summary judgement are denied, the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum, and judgment is entered in favor of Kurilla and against the Commissioner.

## I.      BACKGROUND

The background is set forth in detail in Magistrate Judge Strawbridge's Report and Recommendation dated September 21, 2005, and will be repeated in this Memorandum only where it is necessary to address the issues presented.  Kurilla was 45-years-old at the time of the Administrative Law Judge's ("ALJ") decision on October 31, 2002.[1]  He completed college and worked as a platemaker/proofer, photocomposition artist, platemaker-dot etcher, opti-copy operator, and cashier.  He has not engaged in any substantial gainful activity since February 15, 1998, his asserted onset date.  Kurilla filed an application for Social Security benefits on August 12, 1999.  His 'claim was denied initially and upon reconsideration.  Kurilla then requested a de novo hearing before an ALJ who denied his claim. Kurilla appealed to the Appeals Council who declined to review the case.  The ALJ's decision is, therefore, the final decision of the Commissioner.

## II.     LEGAL STANDARDS

My role on judicial review of the Commissioner's decision is to determine whether it is supported by substantial evidence.  <u>Doak v. Heckler</u>, 790 F.2d 26, 28 (3d Cir. 1986); <u>Newhouse</u>

---

[1]  Under the Commissioner's regulations, Kurilla is considered a "younger person."  20 C.F.R. §§ 404.1563(c), 416.963(c).

v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is defined as "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Rutherford v. Barnhart, 399 F.3d 456, 552 (3d Cir. 2005).  It represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003).  I may not weigh the evidence or substitute my own conclusions for that of the ALJ, however, I must remain mindful that "leniency [should] be shown in establishing claimant's disability."  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002); Reefer, 326 F.3d at 379.

I may make a de novo determination of those portions of Magistrate Judge Strawbridge's well reasoned Report and Recommendation to which the Commissioner's objections were made. 28 U.S.C. § 636(b)(1)(C).  I may "accept, reject or modify, in whole or in part, the magistrate's findings or recommendations."  Brophy v. Halter, 153 F. Supp. 2d 667, 669 (E.D. Pa. 2001)

To prove a disability, Kurilla must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).[2]  Kurilla would be considered unable to engage in any substantial gainful activity "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[2] Regulation 20 C.F.R. § 416.972 defines substantial gainful activity as follows: Substantial gainful activity is work activity that is both substantial and gainful: (a) Substantial work activity is work activity that involves doing significant physical or mental activities.  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before; (b) Gainful work activity is work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A); Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  The ALJ applied a five step

sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920, in determining Kurilla

was not disabled under the regulations.  The five-step sequential evaluation process is:

> 1.  If the claimant is doing substantial gainful activity, he is not disabled.  If the claimant is found not to be engaged in substantial gainful activity, proceed to Step 2.  20 C.F.R. §§ 404.1520(b), 416.920(b).
> 2.  The claimant's impairment(s) must be "severe," meet the duration requirement in 20 C.F.R. §§ 404.1509, 416.909, and significantly limit his physical or mental ability to do basic work activities before a finding of disabled is directed.  If the claimant has a severe impairment(s), proceed to Step 3.  20 C.F.R. §§ 404.1520(c), 416.920(c).
> 3.  If the claimant has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and the severe impairment(s) is listed in Appendix 1 of Subpart P of Part 404 of 20 C.F.R. or is equal to a listed impairment(s), the claimant is presumed disabled without further inquiry.  20 C.F.R. §§ 404.1520(d), 416.920(d).
> 4.  If the claimant retains residual functional capacity to do his past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(e).
> 5.  The inquiry at this step is whether the claimant can do other work that exists in significant numbers in the national economy that accommodates his residential functional capacity and vocational factors.  20 C.F.R. §§ 404.1520(g), 416.920(g).

Burley v. Barnhart, No. 04-4568, 2005 U.S. Dist. LEXIS 19803, at *9 n.6 (E.D. Pa. Sept. 9,

2005).

## III.  THE ALJ'S DECISION

The ALJ found the threshold criteria in Steps 1 and 2 were met.  Kurilla had not engaged

in substantial gainful activity since the alleged disability onset date and his severe impairments,

namely knee osteoarthritis, degenerative disc disease, carpal tunnel problems, a rotator cuff tear

in his right shoulder, tendinitis in his left shoulder, fibromyalgia, and depression, lasted for more

than 12 months.  At Step 3, the ALJ concluded Kurilla's severe impairments did not meet or

medically equal a listed impairment.[3]  Before determining Steps 4 and 5, the ALJ determined that

Kurilla's "statements concerning his impairments and their impact on his ability to work are not

accepted to the extent those statements allege a level of disabling symptoms which exceed what

the objective medical evidence and clinical findings could reasonably be expected to produce."

(Tr. at 31).  The ALJ also discounted the credibility of physicians who found Kurilla to be

disabled.  The ALJ then found that Kurilla had the residual functional capacity ("RFC") to

perform the exertional demands of "light work."  Light work means that he is "able to lift and

carry up to 20 pounds occasionally and 10 pounds on a regular basis; he can walk, stand and sit

up to six hours each."  (Tr. at 31); see 20 C.F.R. § 404.1567.  The ALJ also found that Kurilla's

non-exertional limitations narrow the light work he can do in as much as he "is restricted from

repetitive overhead activity and work involving sustained public contact."  (Id.).  The ALJ

concluded by finding that at Step 4, Kurilla could return to his prior work as a photograph plate

maker.  Therefore, according to the ALJ, Kurilla was not disabled and not entitled to DIB or SSI.

## IV.   THE REPORT AND RECOMMENDATION

On September 21, 2005, Judge Strawbridge filed a Report and Recommendation in which

he found that the ALJ's opinion was not supported by substantial evidence and should be

reversed for an award of benefits.  Judge Strawbridge based this conclusion on two reasons.

First, the ALJ's determination that Kurilla lacked credibility was not supported by substantial

---

[3]  The Listing of Impairments is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background.  Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  The Listing defines impairments that would prevent an adult, regardless of his age, education, or work experience, from performing "any" gainful activity, no just "substantial" gainful activity.  See 20 C.F.R. §§ 404.1525a, 416.925a (2004) (purpose of the Listing is describe impairments "severe enough to prevent a person from doing any gainful activity").  The Listing was designed to operate as a presumption of disability making further inquiry unnecessary.  Zebley, 493 U.S. at 532.  To be found presumptively disabled, a claimant must satisfy the criteria under the Listing.  Id. at 530.

evidence.  Second, the ALJ improperly discredited the opinions of Kurilla's treating physicians and other various treatment providers.  Judge Strawbridge concluded that "Kurilla is unable to engage in substantial gainful activity" based on the vocational expert's testimony that if Kurilla was to be believed, there was no work that he could do.  Instead of remanding for reconsideration of the evidence, Judge Strawbridge recommended that the matter be remanded to the Commissioner "for the sole purpose of calculating the benefits" that Kurilla is entitled to under the DIB and SSI programs.

## V.       THE COMMISSIONER'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

On September 23, 2005, the Commissioner filed objections to Judge Strawbridge's Report and Recommendation.  In the objections she argues that Judge Strawbridge "erred as a matter of law because the ALJ's residual functional capacity assessment which led to a determination of 'not disabled' was clearly supported by substantial evidence.  Judge Strawbridge never analyzed whether substantial evidence supported the residual functional capacity (RFC) finding of the ALJ, but rather, rejected the ALJ's credibility analysis and erroneously credited a treating doctor's opinion of disability, an issue which [] Judge Strawbridge conceded was reserved to the Commissioner."  (Def.'s Objection at 1).  Finally, in a footnote at the end of her Objections, the Commissioner also argues that Magistrate Judge Strawbridge's remedy, remanding for an award of benefits, is improper when there is a doubt as to whether Kurilla is entitled to DIB or SSI benefits.  (Id. at 9).

## VI.      DISCUSSION

The Commissioner's Objections presents three issues that must be resolved: (1) whether

the ALJ properly assessed Kurilla's credibility; (2) whether the ALJ properly rejected the opinions of Kurilla's doctors who found him to be disabled; and (3) whether to accept Judge Strawbridge's Recommendation to remand the case for a calculation of damages. Although I adopt Judge Strawbridge's findings regarding the ALJ's assessment of Kurilla's credibility and find that this case should be remanded, I cannot adopt Judge Strawbridge's Recommendation to award Kurilla benefits.

**A.      The ALJ's Assessment of Kurilla's Credibility**

Judge Strawbridge's Report and Recommendation parses through the record in a vain search for substantial evidence supporting the ALJ's conclusion that Kurilla's subjective complaints of pain were uncredible. Instead of thoroughly explaining her objections to Judge Strawbridge's conclusion on this issue, the Commissioner's one paragraph missive attempts to shift the focus away from the issue of Kurilla's credibility:

> While the aforesaid clinical findings and objective tests show that [Kurilla] had some difficulties with his back, knees and left shoulder and with depressive symptoms, the clinical findings failed to support a disabling level of severity. Moreover, [Kurilla's] activities of daily living also failed to support his claim of a disabling physical or mental impairment. Thus, by getting "caught up" in the minutia of the ALJ's interpretation of the evidence with respect to [Kurilla's] credibility, Judge Strawbridge failed to address the ultimate determination at issue in every disability case – does substantial evidence show support [sic] the ALJ's finding of non-disability.

(Def.'s Objection at 5) (footnote omitted). The Commissioner is incorrect. Kurilla's credibility is crucial to establishing the weight I must give to his subjective complaints. In fact, the regulations provide that the Commissioner must consider all of Kurilla's symptoms and the extent to which subjective complaints "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). If a finding of

disability cannot be made solely on the basis of objective medical evidence, the Commissioner must "carefully consider" Kurilla's statements concerning his symptoms, given that "symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7p.

The credibility of Kurilla's subjective complaints is especially important because one of his severe impairments is fibromyalgia. Fibromyalgia is defined as "any of a group of nonarticular rheumatic disorders characterized by pain, tenderness, and stiffness of muscles and associated connective structures." Kosiba v. Merck & Co., 384 F.3d 58, 62 n.3 (3d Cir. 2004) (defining fibromyalgia). It is a "elusive and mysterious" impairment because it lacks "both a clear etiology and objective diagnostic testing capable of verifying the legitimacy of accompanying symptoms." Klimas v. Conn. General Life Insurance Co., No. 04-5408, 2005 U.S. Dist. LEXIS 18555, at *34 (E.D. Pa. Aug. 17, 2005) (citing Green-Younger v. Barnhart, 335 F.3d 99, 108 (2nd Cir. 2002) (noting that fibromyalgia is a "disabling impairment" without "objective tests which can conclusively confirm the disease"); Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996) (finding that symptoms of fibromyalgia are "entirely subjective," as "there are no laboratory tests for the presence or severity of fibromyalgia")). Therefore, due to the subjective nature of his fibromyalgia, determining whether the ALJ properly assessed Kurilla's credibility is a fundamental part of the larger question – whether substantial evidence supports the ALJ's determination that Kurilla was not disabled.

Here, Judge Stawbridge's Report and Recommendation thoroughly examines the ALJ's credibility determination and found that it was not supported by substantial evidence. I agree. First, the ALJ made factual errors when reviewing Kurilla's credibility. Second, the ALJ made

unsupported inferences pertaining to both Kurilla's mental health treatment and treatment for his physical impairments. Third, the ALJ exaggerated the physical exertion expended by Kurilla when he supported himself with a cane during the testimony and accomplished daily activities like surfing the internet, watching television, and playing with his child while sitting or lying down. In her Objection, the Commissioner presents the same facts considered, and rejected, by Judge Strawbridge's Report and Recommendation. I, therefore, adopt Judge Strawbridge's rejection of the ALJ's credibility determination because it was not supported by substantial evidence.

**B.     The ALJ's Assessment of Kurilla's Treatment Providers**

The Commissioner's second argument focuses on the fact that Judge Strawbridge acknowledges that the final decision of whether Kurilla is disabled belongs to the Commissioner and not the treatment providers, but nevertheless rejects the ALJ's analysis of the weight given to the physicians who treated Kurilla. Specifically, the Commissioner argues that Judge Strawbridge improperly relied upon the opinions of Drs. Huppert and Padnes in determining that there was no substantial medical evidence to support the ALJ's opinion that Kurilla was not disabled. Instead, the Commissioner argues, the relevant inquiry is whether the ALJ was entitled to disregard the opinions of Drs. Huppert and Padnes as inconsistent with the medical evidence and unsupported by the record. I disagree with both the Commissioner and Judge Strawbridge.

Generally the findings and opinions of treating physicians should be given controlling weight, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Rutherford, 399 F.3d at 554, especially "when their opinions reflect expert judgment over a prolonged period of time." Plummer, 186 F.3d at 429. The weight given to a treating physician's opinion, however, depends upon whether

it is supported by accepted clinical diagnostic techniques and with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); <u>Coria v. Heckler</u>, 753 F.2d 245, 247 (3d Cir. 1984).  The only reasons for an ALJ to reject a treating physician's opinion are "on the basis of contradictory medical evidence," <u>Plummer</u>, 186 F.3d at 429, or if the opinion is unsupported by medical data.  <u>Newhouse v. Heckler</u>, 753 F.2d 283 (3d Cir. 1985).  When a conflict exists between the opinions of a treating physician and a non-treating physician/non-examining physician, the ALJ can credit either, but "cannot reject evidence for no reason or for the wrong reason."  <u>Mason v. Shalala</u>, 994 F.2d 1058, 1067 (3d Cir. 1993).  "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects," <u>Plummer</u>, 186 F.3d at 429, and must not make speculative inferences from medical evidence.  <u>Smith v. Califano</u>, 637 F.2d 968, 972 (3d Cir. 1981).

I find the ALJ improperly weighed the conflicting medical evidence and made an unreasonable decision that was unsupported by the evidence.  This finding, however, is tempered by the fact that the ALJ's conclusions regarding Kurilla's degenerative disc disease, carpal tunnel problems, rotator cuff tear, and shoulder tendinitis were supported by substantial evidence in the medical record.  First, with respect to Kurilla's knee osteoarthritis, the ALJ correctly noted that the x-rays relied on by Dr. Hupper showed only mild degenerative changes and a more recent x-ray of his knees showed only degenerative changes to the patella and no joint space narrowing. (Tr. 26, 441).  Second, Kurilla's shoulder problems were mitigated by the fact that Dr. Padne's physical examination revealed that Kurilla had only a mild restriction in his left shoulder range and no restriction of motion in his right shoulder.  Third, the ALJ pointed out that Kurilla suffered from degenerative disc disease in 1991 and that an MRI in 2000 revealed similar results.

10

Since Kurilla was able to do light work from 1991 through 1996, the ALJ reasoned that his degenerative disc disease was not debilitating.  (Tr. 25).  Finally, the ALJ gave more weight to the opinion of Dr. Shakt, who treated Kurilla for 11 years, including three years after his alleged onset of disability.  (Tr. 250-52).  Dr. Shakt's examination of Kurilla found that he had "good balance, a normal gait, normal fine and dextrous movements, equal and bilateral deep tendon reflexes, 4/5 grip strength, 4/5 motor power in his arms and legs, and mental functioning within normal limits."  (Def.'s Objections at 8, citing Tr. 250-52).  This medical evidence satisfies the substantial evidence standard of review that binds my decision.

Unfortunately, the ALJ failed to properly weigh the evidence of Kurilla's fibromyalgia and the impact this impairment had on his ability to return to work.  The ALJ analyzed Kurilla's fibromyalgia evidence as follows:

> In his [May 6, 2002] report, Dr. Huppert indicated his support for his claimant's request for disability benefits.  Dr. Huppert provided additional information on the claimant's Fibromyalgia impairment, indicating that the claimant has the requisite number of tender point areas to satisfy the America College of Rheumatology definition of Fibromyalgia. . . . Dr. Huppert's diagnosis is accepted as a severe impairment. . . . Dr. Huppert does not provide any clinical findings demonstrating what limitations the claimant experiences due to his Fibromyalgia.  Accordingly, Dr. Huppert's unsupported opinion of disability is not accepted as credible.

(Tr. 26).

As I stated above, fibromyalgia is a difficult disease to diagnose due to the fact that "there are no laboratory tests for the presence or severity of fibromyalgia."  Sarchet, 78 F.3d at 306-07.  "The principle symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and – the only symptom that discriminates between it and other diseases of a rheumatic character – multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the

11

patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." Id. Dr. Huppert reported that Kurilla had 18 of 18 trigger spots. Moreover, Kurilla complained of the type of "pain all over," fatigue, disturbed sleep, and stiffness symptomatic of fibromyalgia. However, having already improperly determined that Kurilla's subjective complaints lacked credibility, the ALJ had little trouble dismissing Dr. Huppert's diagnosis of fibromyalgia. She did so too hastily. Although I am aware that the symptoms for fibromyalgia are easy to fake, there is no serious doubt that Kurilla is afflicted with the disease.[4] Unfortunately, it is difficult to determine the severity of his condition due to the fact that there are no objective clinical tests. The question is whether Kurilla is one of the few for whom fibromyalgia causes disability or one of the many for whom it does not. Id. (citing Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med. J. 386 (1995); Preston v. Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir. 1988) (per curiam). The record before the ALJ on this topic consisted solely of Kurilla's complaints and treating physician Dr. Huppert's diagnosis that Kurilla was totally disabled. Without any evidence to the contrary other than her erroneous determination that Kurilla lacked credibility, I must conclude that the ALJ impermissibly rejected Dr. Huppert's diagnosis without substantial evidence.

**C.     Remand**

As stated above, there is a five-step test to determine whether a claimant is entitled to

---

[4] Judge Posner first declared that the symptoms of fibromyalgia are easy to fake, but included a caveat that "few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch." Sarchet, 78 F.3d at 307. Having found that Kurilla's credibility was improperly impugned, I need not wonder whether he is one of the public-grifters who spend their days thinking of ways to misappropriate SSI and DIB benefits by learning the 18 fibromyalgia points.

social security benefits. Before determining Steps 4 and 5, the ALJ determined that Kurilla's "statements concerning his impairments and their impact on his ability to work are not accepted to the extent those statements allege a level of disabling symptoms which exceed what the objective medical evidence and clinical findings could reasonably be expected to produce." (Tr. at 31). The ALJ also discounted the credibility of physicians who found Kurilla to be disabled. The ALJ then found that Kurilla had the residual functional capacity to perform the exertional demands of "light work." (Tr. at 31); see 20 C.F.R. § 404.1567. The ALJ concluded by finding that at Step 4, Kurilla could return to his prior work as a photograph plate maker. Therefore, according to the ALJ, Kurilla was not disabled and not entitled to DIB or SSI.

Instead of remanding this case for a reconsideration of the evidence, Judge Strawbridge's Report and Recommendation granted Kurilla benefits and remanded the case to the Commissioner for the sole purpose of calculating benefits. Having rejected the ALJ's conclusions regarding Kurilla's credibility and Drs. Huppert's and Padnes' assessments, Judge Strawbridge focused on the vocational expert's testimony. The vocational expert testified that if the reports of Drs. Huppert and Padnes were accepted by the ALJ, then Kurilla would not be able to perform gainful employment. Although this maybe true, the vocational expert's opinion is not binding and this case needs to be remanded for a reassessment of the evidence to complete the required five-step test to determine whether Kurilla is entitled to SSI or DIB benefits. Even if the ALJ's determination that Kurilla could do "light work" is incorrect, granting social security benefits at Step 4 improperly truncates the sequential process. Step 5 of the process is necessary to determine whether Kurilla could perform a less demanding level of work, such as sedentary work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Therefore, I cannot award benefits to Kurilla.

Judge Strawbridge concluded, and I agree, that the ALJ's credibility determinations for both Kurilla and his treating physicians contained errors.  Based on these concerns, the cross-motions for summary judgment must be denied and this matter must be remanded for further proceedings consistent with this Memorandum.  This shall include a new consultative exam to determine the effects of Kurilla's fibromyalgia on his residual functional capacity.  Furthermore, the ALJ shall obtain a new residual functional capacity assessment by a physician, preferably a rheumatologist, who has experience and an expertise in fibromyalgia and its related symptoms.  This will ensure that Kurilla's subjective complaints are fully considered.  Thereafter, the ALJ shall reconsider Kurilla's testimony and reassess the weight assigned to the reports of her treating physicians.

An appropriate order follows.

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHARLES A. KURILLA, II, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.  04-1724 |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

**AND NOW**, this 18th day of October, 2005, upon consideration of the cross-motions for Summary Judgment, and after reviewing the Report and Recommendation of United States Magistrate Judge David R. Strawbridge dated September 21, 2005, and Commissioner's Objections to the Report and Recommendation of Judge Strawbridge, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1. The Report and Recommendation (Doc. No. 18) of United States Magistrate Judge David R. Strawbridge dated September 21, 2005 is **ACCEPTED IN PART** and **REJECTED IN PART**;

2. The Commissioner's Objections (Doc. No. 19) to Judge Strawbridge's Report and Recommendation are **GRANTED IN PART** and **OVERRULED IN PART**;

3. Plaintiff Charles A. Kurilla's Motion for Summary Judgment (Doc. No. 14) is **DENIED**;

4. The Commissioner's Motion for Summary Judgment (Doc. No. 15) is **DENIED**;

5. The case is **REMANDED** to the Commissioner of Social Security for further proceedings consistent with this opinion in accordance with the fourth sentence of 42 U.S.C. § 405(g); and

6. Pursuant to Federal Rule of Civil Procedure 58, **JUDGMENT IS ENTERED** in favor of Plaintiff Charles A. Kurilla and against Defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration.

BY THE COURT:

\_\_/s/ Robert F. Kelly_____
Robert F. Kelly                    Sr. J.

2